[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11864
Non-Argument Calendar
_____

D.C. Docket No. 2:19-cv-00064-RDP

KEVEN ROBINSON,
on behalf of himself and others similarly situated,

                                                        Plaintiff - Appellee,

versus

VIRGINIA COLLEGE, LLC,
EDUCATION CORPORATION OF AMERICA,

                                                        Defendants - Appellants.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(October 16, 2019)

Before MARCUS, WILLIAM PRYOR and ROSENBAUM, Circuit Judges.

PER CURIAM:

Virginia College, LLC, and its parent company, Education Corporation of America, appeal the denial of their motion to compel Keven Robinson to arbitrate his complaint against the entities and to strike the class allegations from his complaint. Robinson earned three degrees from Virginia College, and later he became its employee and signed an arbitration agreement. After the College lost its accreditation and closed several of its campuses, Robinson sued the College and Education Corporation for allegedly awarding worthless degrees, deceiving former and current students, and depriving students of postgraduation services and employment opportunities. The district court ruled that Robinson's complaint fell outside the scope of his employment-related arbitration agreement. We affirm.

## I. BACKGROUND

To determine whether Robinson's complaint was arbitrable, we accept as true his allegations about his education at and his employment with the College. *See Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1328 n.1 (11th Cir. 2014) (accepting as true allegations in a complaint dismissed due to an arbitration agreement). According to Robinson, between 2000 and 2011, he obtained an associates degree, a bachelor's degree, and a master's degree from the College. The College and Education Corporation promised to provide students

credentials necessary to obtain a job following graduation. And Robinson amassed a student debt of more than $100,000 to pay for his education.

In 2015, the College hired Robinson as an employee. He signed an arbitration agreement that referred to him as "Employee" and to Education Corporation, its "affiliates, [and] subsidiaries" as "the Company" and defined Robinson's "Employment with the Company [as] at-will." The agreement required that the "dispute, controversy or claim[] aris[e] out of or relate[] to this Agreement, the employment relationship between the parties, or the termination of the employment relationship . . . ." Those disputes "include[d] any claims that the Company may have against the Employee or that Employee may have against the Company. . ., including any claims that could have been brought before any court." The agreement also contained a class action waiver that allowed "the Company . . . [to] lawfully seek enforcement of this Arbitration Agreement" despite the right of "Employee . . . [to] exercis[e] . . . rights under Section 7 of the National Labor Relations Act . . . ." The class action provision permitted the parties, "**BY ENTERING THIS AGREEMENT, . . . [TO] BRING CLAIMS AGAINST THE OTHER ONLY IN THEIR INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS AND/OR COLLECTIVE PROCEEDING.**"

The agreement required the arbitration to be administered under "the American Arbitration Association Employment Arbitration Rules," a copy of which Robinson could obtain from his "HR representative." And the agreement required Robinson to comply with employment laws that required him to "exhaust administrative remedies" with labor organizations such as "the Equal Employment Opportunity Commission ("EEOC"), the National Labor Relations Board ("NLRB"), [and] the U.S. Department of Labor ("DOL")."

The agreement delineated what employment-related claims were included and excluded from arbitration. Robinson and the company agreed to a non-exhaustive list of claims to arbitrate that included,

> . . . claims under the Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards, [sic] Act, Employee Retirement Income Security Act, Genetic Non-Discrimination Act, . . . any . . . anti-discrimination laws, or any other federal, state or local law, ordinance, or regulation based on any public policy, contract, tort, or common law.

The agreement also required arbitration of "claims for workers compensation retaliation . . . [and] violation[s] of the Employment Retirement Income Security Act of 1974, as amended." Claims excluded from the agreement included,

> . . . (i) claims for workers compensation, state disability insurance and unemployment insurance benefits . . .; (ii) claims based upon the Company's current (successor or future), employee pension and/or welfare benefit plans if those plans contain some form of a grievance or other procedure for resolution of disputes . . .; (iii) to the extent permitted by law claims for injunctive relief to enforce rights to trade

4

secrets, or agreements not to compete or solicit clients or employees and (iv) claims that may not be subject to predispute arbitration agreements as provided by the Frank-Dodd Wall Street Reform Act and Consumer Protection Act.

In December 2018, Education Corporation, which operated private colleges across the United States, lost its accreditation. The Education Corporation then closed the College and its other educational institutions.

Robinson filed a complaint in an Alabama court against Education Corporation and the College (collectively Education Corporation), which removed the action to the district court. Robinson complained, on behalf of himself and a putative class of all similarly situated persons, of negligence, wantonness, breach of contract, breach of implied warranties, unjust enrichment, and violations of the Alabama Deceptive Trade Practices Act. Robinson sought monetary damages and injunctive relief.

Education Corporation filed a motion to compel Robinson to arbitrate his complaint and to strike his class allegations, which he opposed. Education Corporation argued that Robinson had "specifically agreed to arbitrate any claims he may have against [it] and [had] waived his right to participate in any class proceeding against [it]" and submitted a copy of his arbitration agreement. Robinson responded that the arbitration agreement was "expressly limited to employment disputes," postdated his education at the College, and "in no way . . . require[d] . . . [him] to arbitrate . . . [his] claims in exchange for employment."

The district court denied the motion filed by Education Corporation on the ground that "the dispute [was] not within the scope of the arbitration agreement and the class action waiver is inapplicable." The district court ruled that "the language in the subject arbitration agreement . . . [was limited] to any and all employment-based or employment-related claims." The district court also ruled that, "[b]ecause [Robinson's] class claims arising from his role as a student (a role that predates the parties' arbitration agreement) are beyond the scope of the employment arbitration agreement, the class action waiver cannot obligate him to pursue his claims individually."

## II. STANDARD OF REVIEW

We review *de novo* the denial of a motion to compel arbitration. *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1208 (11th Cir. 2011).

## III. DISCUSSION

Education Corporation argues that the denial of its motion to arbitrate and to strike Robinson's class allegations "conflicts with . . . hornbook law" and the policy goals of the Federal Arbitration Act to enforce arbitration agreements. It argues that the arbitration agreement "is drafted broadly enough to capture nonemployment-related claims." It also argues that the class action waiver is "independently enforceable."

6

"[A]rbitration is simply a matter of contract." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). To further the purpose of the Federal Arbitration Act to "guarantee[] the enforcement of private contractual arrangements," arbitration agreements must be interpreted consistent with "the clear intent of the parties . . . [and] the plain language of the contract . . . ." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). It follows that "the language of the contract . . . defines the scope of disputes subject to arbitration." *Id.* at 289. So "parties . . . [are not required] to arbitrate when they have not agreed to do so." *Id.* at 293 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)).

The district court correctly denied the motion to compel Robinson to arbitrate. Education Corporation cannot force Robinson to arbitrate claims about his education when their arbitration agreement applies exclusively to employment-related disputes. For a claim to "be arbitrable . . . [it must be] *either directly or indirectly related to the subject matter of the contract*." *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1114 (11th Cir. 2001) (quoting Joseph T. McLaughlin, *Arbitrability: Current Trends in the United States*, 59 Alb. L. Rev. 905, 932 (1996)). The agreement Robinson signed addresses only his employment, and it requires the arbitration of only employment-related claims. "If the language about employment . . . did not limit the scope of the arbitration provision, it would

7

have no purpose, and that is an interpretative no-no." *Doe*, 657 F.3d at 1218. Because employment is the sole subject matter of the arbitration agreement, it does not encompass Robinson's dispute with the company as his educator.

Education Corporation argues that the agreement to arbitrate "any claim" is broad enough to subsume claims related to Robinson's education, but that argument is belied by "the plain text of the contract" and "the clear intent of the parties," *Waffle House*, 534 U.S. at 294. The sentence on which the company relies states plainly that Robinson "agree[s] to arbitrate . . . any claims . . . [he has as an] Employee . . . against the Company" and does not mention education. The preceding sentence reinforces that conclusion; it states that Robinson agrees to arbitrate "any dispute, controversy or claim[] arising out of or related to this Agreement, the employment relationship . . . , or the termination of the employment relationship . . . ." For a claim to "aris[e] out of" or be "related to" a contract "requires the existence of some direct relationship between the dispute and the performance of duties specified by the contract." *Doe*, 657 F.3d at 1218 (discussing *Telecom Italia*). Robinson's claims concerning a worthless degree from the company are not founded in or intertwined with his later employment with the company. Robinson's complaint concerning claims unrelated to his employment is not arbitrable.

8

The district court also correctly refused to strike the class action allegations in Robinson's complaint. By its terms, the class action waiver applies only to claims governed by the arbitration agreement. Because Robinson's complaint is not subject to arbitration under the agreement, its class action waiver does not govern this dispute.

Education Corporation argues that the severability provision in the arbitration agreement salvages the class action waiver, but its argument is irreconcilable with the plain text of the severability provision. That provision states, "[i]f any provision(s) of this Arbitration Agreement is declared overbroad, invalid, or unenforceable such provisions shall be severed . . . and the remaining provisions of the Arbitration Agreement shall remain in full force and effect and shall be construed in a fashion which gives meaning to all of the other terms of this Arbitration Agreement." The arbitration agreement is inapplicable, so by "the plain language of the contract," a condition required for severability does not exist. *See Waffle House*, 534 U.S. at 294.

## IV. CONCLUSION

We **AFFIRM** the denial of the motion to compel arbitration of and to strike the class action allegations in Robinson's complaint.